# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHANE A. KITTERMAN, #B-80577, <br><br> Plaintiff, <br><br> vs. <br><br> JEFF DENNISON, JASON GARNETT, JOANNE HOSCH, GLOBAL TEL-LINK CORP, CHRISTOPHER BRINKLEY, ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR, and UNKNOWN PARTIES, <br><br> Defendants. | Case No. 17-cv-00290-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Shane Kitterman, an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to "42 U.S.C. §§ 1331(1) and 1343."[1] (Doc. 1). In the Complaint, he claims that officials at Big Muddy River Correctional Center ("Big Muddy") retaliated against him for filing grievances and complaints about the prison's video visitation program by removing him from his job assignment, interfering with his court access, assaulting him and ultimately transferring him

---

[1] It is not clear whether Plaintiff intended to designate 28 U.S.C. § 1331 or 42 U.S.C. § 1983 as the jurisdictional basis for his Complaint. He did not use the standard civil rights complaint form offered to *pro se* litigants in this District when he prepared the operative Complaint. Had he done so, Plaintiff would have been prompted to identify the jurisdictional basis for the action as follows: 42 U.S.C. § 1983 for actions brought by state prisoners, 28 U.S.C. § 1331 for actions brought by federal prisoners, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, or other law. Because Plaintiff is a state prisoner who brings his claims against state officials, 42 U.S.C. § 1983 provides the jurisdictional basis for his claims.

1

to Shawnee. (Doc. 1, pp. 1-5). Plaintiff seeks declaratory judgment, monetary damages and injunctive relief. (Doc. 1, p. 6).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint does not survive preliminary review under this standard.

## Complaint

Plaintiff was housed at Big Muddy from January 20, 2016 until January 9, 2017. (Doc. 1, pp. 2, 5). During this time period, the prison allegedly offered inmates the option of participating in "video visitation" with their families. (Doc. 1, p. 2). Acting on behalf of the prison, Warden

Garnett worked with Global Tel-Link, Corp. ("GTL") to make this service available. *Id*. GTL set up kiosks in the prison. *Id*. Inmates who were interested in video visitation were required to purchase an MP3 player and I-mail messaging services from GTL. *Id*. Their families were required to sign a contract for in-home internet services with the same company. *Id*.

Plaintiff wished to participate in the program, so he purchased an MP3 player and other products from GTL. (Doc. 1, p. 3). His family also entered into a contract with the company for internet services. *Id*. After thirty-two days, Plaintiff learned that his MP3 player was "used, defective, and unmerchantable." *Id*. He maintains that video visitation "never existed." *Id*.

Plaintiff attempted to recover the money that he and his family spent on the device, related products, and internet services. (Doc. 1, p. 3). He filed grievances and appealed to the Illinois Department of Corrections ("IDOC") Director. *Id*. However, his grievances "fell on deaf ears" and were denied. (Doc. 1, pp. 3-4). When he attempted to communicate his complaints directly to GTL through the kiosk, Plaintiff was "sanctioned." (Doc. 1, p. 4). This caused him "unwarranted stress and mental anguish." *Id*.

Around the same time, Plaintiff secured a job in the prison law library. (Doc. 1, p. 3). He was assigned the position of law clerk and worked under the supervision of Joanne Hosch. *Id*. Plaintiff had access to hundreds of IDOC inmates in this position and he assisted them in drafting pleadings and other legal documents. *Id*. In the process, he prepared pleadings on behalf of numerous inmates who wanted to recover from the loss of money associated with the prison's video visitation program. *Id*.

Garnett, Hosch and several unknown correctional officers warned Plaintiff "to stop helping other inmates file grievances and complaints against GTL and [D]efendant Garnett." (Doc. 1, p. 3). When he continued to do so, Plaintiff was allegedly assaulted by an unknown

correctional officer. *Id*. He offers no details regarding the assault or any injuries he sustained as a result of it. *Id*.

While working in the library in September and October 2016, Plaintiff observed Hosch and a fellow inmate engage in sexual conduct on several occasions. (Doc. 1, p. 4). Plaintiff reported each incident to the Prison Rape Elimination Act ("PREA") hotline. *Id*. The PREA representative relayed details of his allegations to Lieutenant Denise Minor,[2] who shared the information with Hosch. *Id*. As soon as Hosch learned about Plaintiff's allegations against her, she "immediately removed the plaintiff from his assigned job as a law clerk." *Id*. No disciplinary report or reprimand was ever issued against Hosch. *Id*.

Plaintiff eventually filed suit in Illinois state court under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.[3] (Doc. 1, p. 4). Chris Brinkley allegedly instructed correctional officers to threaten and intimidate Plaintiff in an effort to discourage him from pursuing his claims. (Doc. 1, pp. 4-5). These officers threatened Plaintiff and his family. (Doc. 1, p. 5). Plaintiff provides no details regarding the date, time, context or substance of any threats. *Id*. In response to them, however, he requested a prison transfer to a comparable facility, but the IDOC Director determined that he was "properly placed." *Id*.

The IDOC Director, Garnett and Brinkley changed their minds about Plaintiff's placement after they were served with an order in the pending state case compelling them to

---

[2] This individual is not named as a defendant in the Complaint, and any claims against Lieutenant Minor should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

[3] Plaintiff devotes significant attention in the Complaint to his grievances regarding the video visitation program implemented by Warden Garnett and GTL at Big Muddy. (Doc. 1, pp. 2-6). In connection with this program, Plaintiff explains that he is already pursuing claims against the defendants in Illinois state court, and he has not reasserted those claims here. The state law claims pertaining to the video visitation program are therefore considered dismissed without prejudice from this action. This includes his claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and his claim of fraud.

4

produce documents pertaining to the unlawful sale of defective products to unsuspecting inmates. (Doc. 1, p. 5). Plaintiff was subsequently transferred to Shawnee on January 10, 2017. *Id*. He alleges that the facility is not comparable to Big Muddy. *Id*. Shawnee houses the "worst offenders in the State of Illinois." *Id*. Prison gang activity and violence are significant problems there. *Id*. Inmates are denied access to court-ordered drug and alcohol programs. *Id*. Shawnee is also located farther away from Plaintiff's family than Big Muddy. *Id*. He vaguely alludes to "several incidents of assault by Warden Dennison and his officers that resulted from Plaintiff's continued efforts to pursue his claims against the Director, Garnett, Brinkley and several unknown correctional officers. *Id*. He also refers to instances in which the mailroom staff at Shawnee "blocked and destroyed several legal documents placed in the prison mail system." *Id*.

Plaintiff now asserts claims against the defendants for retaliation. (Doc. 1). In addition, he brings claims of interference with court access, assault and intentional infliction of emotional distress. (Doc. 1, p. 6). Plaintiff seeks declaratory judgment and monetary relief. *Id*. He also requests injunctive relief, in the form of an order requiring prison officials to reinstate his job and transfer him to a facility that is closer to his family. *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following counts:

> **Count 1 -** Fourteenth Amendment claim against Defendants for denying Plaintiff access to video visitation with his family even after he purchased the equipment and service plan necessary to participate in the program through GTL.

> **Count 2** - First Amendment claim against Defendants for retaliating against Plaintiff because he pursued claims for money damages arising from Big Muddy's video visitation program in Illinois state court.
>
> **Count 3** - Fourteenth Amendment due process claim against Defendants for mishandling the grievances and appeals Plaintiff filed to complain about Big Muddy's video visitation program.
>
> **Count 4** - First and/or Fourteenth Amendment denial of access to courts claim against Defendants for interfering with Plaintiff's legal mail and pleadings pertaining to his Illinois state case.
>
> **Count 5 -** Eighth Amendment claim against Defendants for repeatedly assaulting Plaintiff.
>
> **Count 6** - First Amendment retaliation claim against Hosch for removing Plaintiff from his position as law library clerk because he reported her to the PREA hotline for sexual misconduct.
>
> **Count 7** - Illinois state law claim for intentional infliction of emotional distress against Defendants.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. **Any claim that is not included in the above-referenced list should be considered dismissed without prejudice from this action.**

None of the claims survive preliminary review. The Complaint generally lacks sufficient detail to support claims against the defendants. Plaintiff briefly touches upon numerous constitutional deprivations that occurred in connection with the video visitation program at Big Muddy. However, the allegations offered in support of the claims are undeveloped.

In order to survive preliminary review, the claim of entitlement to relief must cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A claim must be dismissed when a plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[A]bstract recitations of the elements of a cause of action or conclusory legal statements" will not support a claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). As discussed in more detail below, Plaintiff consistently fails to nudge his claims from the realm of "possible" to "plausible." As a result, the Complaint states no claim upon which relief may be granted and shall therefore be dismissed.

## Count 1

The Complaint supports no constitutional claim against the defendants for denying Plaintiff access to video visitation at Big Muddy. Courts generally analyze this claim under the Fourteenth Amendment Due Process Clause and consistently hold that the loss of visitation privileges, even those including contact visits, is not an "atypical and significant hardship" that gives rise to a protected liberty interest or triggers the right to due process of law. *See, e.g., Woody v. Zatecky*, 594 F. App'x 311 (7th Cir. 2015) (citing *Lekas v. Briley*, 405 F.3d 602, 605, 607-08, 613 (7th Cir. 2005) (no liberty interest deprived by denial of contact visits plus loss of other privileges); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); *Ramos v. Lamm*, 639 F.2d 559, 580, n. 26 (10th Cir. 1980)). In other words, no claim arises from the denial of access to video visitation.

In his Complaint, Plaintiff did not indicate whether he was otherwise deprived of visitation with his family or that video visitation was his only means of contacting them. Either way, the Complaint states no claim upon which relief may be granted. *Id.* Count 1 shall therefore be dismissed with prejudice against all of the defendants.

7

## Count 2

The Complaint refers to many potential retaliation claims but offers insufficient allegations in support of all of them. A prisoner who seeks to bring a First Amendment retaliation claim must show the following: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Plaintiff alludes to several instances of possible retaliation by the defendants. For example, he alleges that he was "sanctioned" for attempting to complain directly to GTL through the kiosk about his lack of access to video visitation. (Doc. 1, p. 4). Plaintiff further claims that Garnett, Hosch and an unknown correctional officer attempted to dissuade him from filing grievances and complaints about the video visitation services by warning him not to do so, and he was later assaulted by still another individual. (Doc. 1, p. 3). Brinkley and other unknown correctional officers also allegedly threatened Plaintiff not to proceed with his claims against the defendants in Illinois state court. (Doc. 1, pp. 4-5). When the IDOC Director, Garnett and Brinkley were served with discovery in the state suit, Plaintiff was subsequently transferred. (Doc. 1, p. 5). Finally, Plaintiff claims that Dennison and other unknown mailroom staff at Shawnee either assaulted him or interfered with his mail following his transfer. *Id*.

The problem with all of these possible retaliation claims is that Plaintiff offered virtually no factual allegations in support of them. The Complaint drew no connection between the protected conduct and the acts of retaliation. In addition, Plaintiff consistently failed to identify

who was responsible for the retaliatory conduct. It appears that most acts of retaliation were carried out by a non-party. Without connecting the protected conduct and the retaliatory act of a defendant, the Complaint falls short of stating a claim of retaliation against any of the defendants. Accordingly, Count 2 shall be dismissed without prejudice.

**Count 3**

No due process claim arises under the Fourteenth Amendment based on the defendants' mishandling of Plaintiff's grievances and appeals. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. Under the circumstances, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). As such, Count 3 shall be dismissed against all of the defendants with prejudice.

**Count 4**

The Complaint also supports no claim against the defendants for denying Plaintiff access to the courts. Plaintiff refers to instances in which officials at Shawnee "blocked and destroyed several legal documents placed in the prison mail system" in an effort to prevent him from pursuing his Illinois state case. (Doc. 1, p. 5). As discussed above, these allegations are simply too vague and undeveloped to state a plausible court access claim against any of the defendants.

It has long been held that prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Prison officials have an affirmative obligation to provide inmates with access to the law library and materials necessary to pursue litigation. *Martin v. Davies*, 917 F.2d 336, 338 (7th Cir. 1990) (citing *DeMallory v. Cullen*, 855 F.2d 442,

446 (7th Cir. 1988)). Inmates also have a right to send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)). Legal mail receives greater protections than other types of mail. *Id*. Violations of the right to access the courts may be vindicated in federal court in a civil rights action brought pursuant to § 1983.

Before a plaintiff can proceed with a claim, however, he must demonstrate that he suffered actual or threatened detriment to specific litigation. *Id*. at 340; *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). Vague or conclusory allegations to this effect will not support a claim. A plaintiff must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Nowhere in the Complaint did Plaintiff spell out any connection between a defendant's interference with his access to legal materials, the law library or his legal mail and his ability to pursue non-frivolous litigation. Without these basic allegations, the Court cannot allow this claim to proceed. Therefore, Count 4 shall be dismissed without prejudice against the defendants.

**Count 5**

Plaintiff's allegations of "assault" against numerous known and unknown defendants shall also be dismissed. Claims of this type typically arise under the Eighth Amendment, which proscribes cruel and unusual punishment of prisoners. U.S. CONST. amend. VIII. Allegations of both physical and verbal assault may support an Eighth Amendment claim because the alleged pain sufficient to constitute cruel and unusual punishment can be either physical or

psychological. *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015) (citing *Watson v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012)). With that said, "simple verbal harassment" is generally not enough to constitute cruel and unusual punishment. *Beal*, 803 F.3d at 858 (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). Where a plaintiff is subjected to physical force by a prison official, a claim of excessive force may arise under the Eighth Amendment if the official "applied force maliciously and sadistically to cause harm rather than in a good-faith attempt to maintain or restore discipline." *Caffey v. Maue*, -- F. App'x --, 2017 WL 659349 (7th Cir. 2017) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012)).

Plaintiff repeatedly refers to being assaulted by various defendants but provides no context for his claims. He does not indicate whether the "assaults" involved physical contact or verbal harassment or both. Frequently, Plaintiff fails to indicate who assaulted him, even in generic terms. He consistently fails to allege when, where, and under what circumstances each assault occurred and provides no description of the assault itself. The Court has no way of knowing what, if any, injuries Plaintiff sustained as a result of each assault. It is also unclear whether other prison officials were present and failed to intervene. Given the absence of details regarding the various assaults on Plaintiff by the defendants, this claim cannot proceed and Count 5 shall be dismissed without prejudice against all of the defendants at this time.

**Count 6**

The Complaint fails to state a viable First Amendment retaliation claim against Hosch. According to the Complaint, Hosch immediately terminated Plaintiff from his position as a law clerk when she learned that he reported her for sexual misconduct to the PREA hotline. (Doc. 1, p. 4). The protected conduct, *i.e.,* his report of staff sexual misconduct to the PREA hotline, is

premised on allegations that suggest Hosch's misconduct was merely possible and not plausible. Plaintiff specifically alleges that he reported Hosch for sexual misconduct after he witnessed her engaging in interactions of a sexual nature with another inmate. *Id*. He does not describe the conduct that he observed or indicate that Hosch was ever disciplined for it. *Id*. On the contrary, he alleges that Hosch was never disciplined or even reprimanded. *Id*.

In the context of First Amendment retaliation claims, "[o]nly nonfrivolous prisoner's grievances against prison officials are protected by the First Amendment." *Gillis v. Pollard*, 554 F. App'x 502, 506 (7th Cir. 2014) (citing *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Herron v. Harrison*, 203 F.3d 410, 415 (7th Cir. 2000)). The Court is unable to find that Plaintiff engaged in protected conduct because he offers no indication that his complaint about Hosch via the PREA hotline was nonfrivolous. Where a plaintiff "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Twombly*, 550 U.S. at 557)). The allegations offered in support of this claim do not show that Plaintiff is entitled to relief. *See id*. (citing FED. R. CIV. P. 8(a)(2)). Count 6 shall therefore be dismissed without prejudice against Defendant Hosch.

## Count 7

Plaintiff's state law claims shall also be dismissed without prejudice at this time. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual

connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294, 1299 (7th Cir. 1995)).

Plaintiff asserts that the defendants' actions constitute intentional infliction of emotional distress. However, the allegations are insufficient to support a claim against any of the defendants. The Illinois Supreme Court has set forth three requirements necessary to demonstrate the intentional infliction of emotional distress: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey,* 126 Ill. 2d 78, 127 Ill. Dec. 724, 533 N.E.2d 806, 809 (1988)).

Beyond vaguely alluding to mental anguish and emotional distress, Plaintiff offers virtually no allegations in support of this claim. It is unclear what conduct on the part of the defendants caused him to suffer distress. More to the point, Plaintiff fails to describe his level of distress in a manner that suggests it was indeed severe. He does not mention any symptoms of distress or the need for mental health treatment or medication. Plaintiff also does not describe the impact of this distress on his daily life. Once again, the allegations in the Complaint fall far short of supporting this claim. Accordingly, Count 7 shall also be dismissed without prejudice against all of the defendants.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated above, the Complaint is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNTS 1, 2, 4, 5, 6,** and **7** are **DISMISSED** without prejudice, and **COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to file a "First Amended Complaint" in this case **on or before June 19, 2017.** Should Plaintiff fail to file his First Amended Complaint within the allotted time, dismissal of this action will become with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994). Further, a "strike" will be assessed. *See* 28 U.S.C. § 1915(g).

Should Plaintiff decide to file an amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should be careful to label the pleading, "First Amended Complaint," and he must list *this* case number (Case No. 17-290-SMY) on the first page. To enable Plaintiff to comply with this Order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff must describe the actions taken by each defendant that resulted in the deprivation of his constitutional rights. He should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits or including any other unrelated claims in his amended complaint. **Claims found to be unrelated will be further severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.**

Plaintiff is **ADVISED** that *this* dismissal shall not count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original Complaint, rendering the original void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Finally, the First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 22, 2017**

s/ STACI M. YANDLE
**District Judge,**
**United States District Court**